IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANDREA JENKINS,<br><br>      Plaintiff,<br>v.<br><br>STATE OF UTAH, RAY HARRIS, MARIE LOOSLE, TINA SWEET, and JOHN DOES I-V,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:19-cv-00886-DAK<br><br>Judge Dale A. Kimball |

   This matter is before the court on Defendant the State of Utah's Motion for Judgment on the Pleadings. On July 14, 2020, the court telephonically held oral argument on the motion. Defendant was represented by Christine Suzanne Dyer Hashimoto, and Plaintiff was represented by David J. Holdsworth. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

   Plaintiff Andrea Jenkins ("Jenkins") was an employee of the Department of Social Services, Division of Child and Family Services ("DCFS") for the State of Utah (the "State") where she worked in archiving. Jenkins suffers from degenerative disc disease, severe facet arthropathy, and bulging discs, and therefore asserts that she suffers from a disability. Around 2015, DCFS constructed a new building in Sandy, Utah. After construction was complete, Jenkins was required to assist in the moving of numerous case files, which exacerbated her back

problems. During that time, Jenkins sought reasonable accommodations in order to continue performing her job without having to engage in physical activity that would aggravate her physical disabilities. Jenkins' request for accommodations eventually turned into several years of her working with her supervisors and other State employees, including Ray Harris, the Region Director over Jenkins' work region, Tina Sweet, the Human Resource Specialist assigned to DCFS, and Marie Loosle ("Loosle"), a Financial Analyst with DCFS, to try and create accommodations that would allow her to do her job despite her physical disability.

Over the course of trying to obtain reasonable accommodations, Jenkins alleges that DCFS employees, including the aforementioned employees, discriminated and retaliated against her, making it difficult for her to do her job. As a result, she filed multiple charges of discrimination with the EEOC and a grievance with the Career Service Review Office ("CSRO"). Eventually, Jenkins claims that her work environment became so negative that she was effectively constructively discharged from her job with DCFS. Subsequently, the State filed a motion with the CSRO, claiming that Jenkins' CSRO appeal became moot as a result of her leaving DCFS. Jenkins opposed the motion and argued that DCFS had constructively discharged her. The CSRO recognized Jenkins' claim for constructive discharge, but determined that it lacked jurisdiction to review such a claim. Accordingly, it dismissed Jenkins' grievance on April 17, 2019.

Several months later, Jenkins filed the instant suit and asserted five causes of action: (1) Failure to Accommodate and Discrimination on the Basis of Disability in violation of the Rehabilitation Act of 1973 (the "RA"); (2) Retaliation in violation of the RA; (3) violations of Title II of the Americans with Disabilities Act ("ADA"); (4) violations of the Utah Protection of

Public Employees Act (the "UPPEA"); and (5) denial of due process in violation of 42 U.S.C. § 1983.

## DISCUSSION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the State now moves for judgment on the pleadings as to each of Jenkins' five causes of action. When considering a party's motion for judgment on the pleadings under Rule 12(c), courts apply the same standard applicable to motions to dismiss under Rule 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotation marks omitted). The court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Importantly, "[a] motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins.*, 698 F.3d at 1228 (quoting *Park Univ.*, 442 F.3d at 1244).

## I.     RA Discrimination Claim

Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In determining whether a defendant has violated the RA in employment discrimination cases, Section 504 utilizes "the standards applied under title I of the Americans with Disabilities Act ["ADA']." *Id.* §794(d). Accordingly, "[c]ases decided under [S]ection 504 of the [RA] are . . . applicable to cases brought under the ADA and vice versa." *Rivero v. Bd. of Regents of Univ. of New Mexico*, 950 F.3d 754, 758 (10th Cir. 2020) (quoting *Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997)).

To state an employment discrimination claim in violation of the RA, a plaintiff must show that he or she "(1) was disabled; (2) was qualified . . ., and (3) suffered adverse employment action because of the disability."[1] *Id.* at 760. "In general, '[o]nly 'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits' will rise to the level of an adverse employment action.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (alteration in original) (quoting *Haynes v.*

---

[1] It is worth noting that there exists caselaw within this Circuit that articulates the elements of an RA discrimination claim in a manner differently than contained herein. In those cases, in order to state a discrimination claim under the RA, a plaintiff must that establish: "(1) that [he or she] is disabled under the Act; (2) that he [or she] would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance . . . ; and (4) that the program has discriminated against the plaintiff." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010). Clearly, under either articulation, the first two elements are the same. As for the third element, while it is not explicitly contained in the standard listed above, the court finds that element is inherent in that standard. And although there appears to be a discrepancy between the final elements, the court finds that both articulations are merely different iterations of the same idea. For example, in the employment context, one of the principal ways in which an employee will show that he or she has been discriminated against is by providing evidence that he or she suffered an adverse employment action. Thus, given that Jenkins' asserts her claim using the elements above, the court will analyze her claims in that same manner.

4

*Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006)). Conversely, "a mere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action." *Id.* (internal quotation marks omitted).

In this case, the State only attacks the third element, contending that Jenkins has failed to adequately plead that she suffered an adverse employment action. More specifically, the State contends that Jenkins' discrimination claim relies exclusively on the contention that she suffered an adverse employment action through constructive discharge. The court, however, disagrees. When viewing the Complaint in its entirety, the court concludes that Jenkins has alleged at least three different adverse actions that could each support individual discrimination claims. In the Complaint, Jenkins alleges that she received a suspension without pay in May 2018. Although management cited unprofessional emails as the reason behind the suspension, Jenkins contends that the suspension was actually motivated by discriminatory and retaliatory animus in response to her claims of discrimination and harassment. Similarly, Jenkins alleges that she received another suspension without pay in January 2019 after an argument that she had with Loosle.[2] Again, although management cited misconduct as the reason behind the suspension, Jenkins alleges that the confrontation and resulting suspension were both byproducts of her seeking ADA accommodations. Given that this case is at the pleading stage, the court concludes that, when viewing the Complaint as a whole, Jenkins has adequately alleged that both of her suspensions constituted adverse employment actions for purposes of her RA discrimination claim. *See Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, No. 18-2664-DDC-ADM, 2020 WL 2523291, at

---

[2] The court notes that the January 2019 suspension had not yet been imposed when Jenkins was allegedly discharged. Notwithstanding its enforcement being prospective, the court finds that it constitutes an adverse action at this stage of the litigation because it was to be a suspension without pay, i.e., a decision that would change or alter Jenkins' benefits.

\*19 (D. Kan. May 18, 2020) (unpublished) ("Suspension[s] . . . qualify as adverse employment actions.").³

The court also concludes that Jenkins has provided sufficient factual material within her complaint to adequately allege that she suffered an additional adverse employment action through her alleged constructive discharge. "A claim of constructive discharge . . . has two basic elements[:] [F]irst that [the plaintiff] was discriminated against by his [or her] employer to the point where a reasonable person in his [or her] position would have felt compelled to resign. . . . [Second,] that he [or she] actually resigned." *Rivero*, 950 F.3d at 761 (quoting *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016)). "Essentially, a plaintiff must show that she had no other choice but to quit. The conditions of employment must be objectively intolerable[.]" *Id.* (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998)). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

The State contends that Jenkins was not constructively discharged. To support this assertion, the State points to an audio recording that Jenkins made during the meeting in which she was allegedly constructively discharged. The State argues that, based on that recording, it is clear that Jenkins voluntarily resigned. The court, however, is unpersuaded by the State's arguments for two reasons. First, based on the standard set forth above, an alleged constructive discharge includes events that happened over a period of time before a plaintiff's actual

---

³ In the Complaint, under the section asserting Jenkins' first cause of action, Jenkins specifically points to her alleged constructive discharge as an adverse employment action. Given that Jenkins focuses primarily on constructive discharge in that section, it is no surprise that the State argues that she relies exclusively on constructive discharge to support her claim. However, when viewing the Complaint as a whole, the court is convinced that Jenkins discrimination claim is not based entirely on the alleged constructive discharge, but also incorporates the events leading up to the discharge, including the two suspensions.

6

resignation. Thus, a court cannot properly consider an alleged constructive discharge by merely viewing a single event in isolation. Rather, it is necessary to consider all of the events leading up to the alleged constructive discharge to properly determine whether the resignation was voluntary or forced. In this case, when considering all of the events leading up to the alleged constructive discharged, the court finds that Jenkins has adequately alleged that she was constructively discharged.[4] Second, as a general matter, constructive discharge claims are highly fact-intensive inquiries that are more appropriately dealt with in the later stages of a case. *Steele v. City of Topeka, Kan.*, No. 2:14-CV-02094-EFM-GL, 2014 WL 3734185, at *3 (D. Kan. July 29, 2014) (unpublished) (finding in a Title VII employment case that "the voluntariness of a plaintiff's resignation is the lynchpin of a constructive discharge claim and is a question of fact that cannot be decided at the pleading stage of litigation").

Because the court concludes that Jenkins has adequately pleaded that she suffered adverse employment actions, the court denies the State's motion as to Jenkins' RA discrimination claim.

## II.     RA Retaliation Claim

The Tenth Circuit has long held that the RA "prohibits not just discrimination on the basis of disability but retaliation against those who report disability discrimination." *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1165 (10th Cir. 2014). Similar to the standard discussed above, "[t]he standard for retaliation claims under the [RA] is the same as the standard for retaliation claims under the [ADA]." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). Thus, once again, retaliation cases decided under the ADA are equally applicable to retaliation cases decided under the RA. *See id.* Accordingly, to state a

---

[4] While this case is undoubtedly unique given that there is an actual recording of the meeting that resulted in the alleged constructive discharge, again, the court cannot consider that single meeting as an isolated event untethered from the events leading up to the meeting.

7

retaliation claim, a plaintiff must show "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Jarvis v. Potter*, 500 F.3d 1113, 1125 (10th Cir. 2007) (quoting *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003)).

In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," although mere inconveniences or alterations of job responsibilities are still insufficient. *Reinhardt*, 595 F.3d at 1133 (noting that this standard comes from cases arising under Title VII of the Civil Rights Act of 1964 and explaining that same standard applies in ADA and RA cases). Thus, given that an adverse employment action for a retaliation claim "is not limited to discriminatory actions that affect the terms and conditions of employment," an action may constitute an adverse employment action for a retaliation claim while failing to rise to an adverse employment action for a discrimination claim. *See id.*; *see also Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 605 (10th Cir. 2019) (noting that, in the Title VII context, "less is required to prove an adverse employment action for a retaliation claim than a discrimination claim"); *Olonovich v. FMR-LLC Fid. Investments*, No. CV 15-599 SCY/WPL, 2016 WL 9777193, at *5 (D.N.M. June 21, 2016) (unpublished) (discussing the "closely related but different standards of 'adverse action' [for] discrimination and retaliation causes of action" under the ADA).

In this case, the State attacks Jenkins' retaliation claim on the same grounds that it attacked her discrimination claim—that she has failed to establish that she was constructively discharged. As stated above, however, the court finds that Jenkins has adequately pleaded that

8

she was constructively discharged. Furthermore, given the lower standard for an adverse employment action in the retaliation context, the court finds that Jenkins's complaint properly alleges multiple adverse employment actions, including, but not limited to, her alleged suspensions. Therefore, because Jenkins has adequately alleged that she suffered an adverse employment action, the court denies the State's motion as to the RA retaliation claim.

### III. Title II Claim

In her opposition and during oral argument, Jenkins conceded that, based on binding Tenth Circuit precedent, her Title II claim is not viable and, she did not oppose its dismissal. *See Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1316 (10th Cir. 2012) ("Title II does not contain an independent cause of action for employment discrimination."). Therefore, the State's motion is granted as to Jenkins' Title II claim, and that claim is dismissed with prejudice.

### IV. UPPEA Claim

The UPPEA, commonly known as Utah's Whistleblower Act, prohibits employers from "tak[ing] adverse action against an employee because the employee . . . communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation." Utah Code Ann. § 67-21-3(1)(a). Under the UPPEA,

> [A] public entity employee who is not a legislative employee or a judicial employee may bring a claim of retaliatory action by selecting one of the following methods:
>
> (i) filing a grievance with the [CSRO] in accordance with Section 67-19a-402.5; or
>
> (ii) bringing a civil action for appropriate injunctive relief, damages, or both, within 180 days after the occurrence of the alleged violation of this chapter.

*Id.* § 4(1)(c).

9

Here, the State argues that Jenkins' UPPEA claim is time-barred. The State contends that the alleged violation in this case is the purported constructive discharge, which took place on March 27, 2019. As such, Jenkins was required to file suit by September 23, 2019. She did not file her complaint, however, until November 2019. Consequently, the State contends that Jenkins' action is barred by the statute of limitations. In opposition, Jenkins first points out that, as of the date of her alleged constructive discharge, she had an active case with the CSRO. Notably, she notes that the CSRO recognized her claim for constructive discharge prior to dismissing it for lack of jurisdiction. She therefore claims that her UPPEA claim is timely. More specifically, she contends that because she had an active CSRO claim when she was allegedly constructively discharged, the 180-day time period is inapplicable, and she was thus free to bring her claim when she did.

The court finds Jenkins' first argument to be untenable. As stated above, Subsection 4(1)(c) provides that a public employee can "bring a claim of retaliatory action by selecting *one* of the following methods: (i) filing a grievance with the [CSRO] . . . ; *or* (ii) bringing a civil action . . . within 180 days after . . . of the alleged violation of this chapter." *Id.* § 4(1)(c) (emphasis added). Thus, under the plain terms of the statute, Jenkins could select only one of two available options. Given that she elected to pursue her claim before the CSRO, she was foreclosed from bringing that same claim through a civil action. Yet, even if she were permitted to bring her claim by filing suit, she did so beyond the 180-day time period. As such, the court is unpersuaded by Jenkins' first argument.

Jenkins nevertheless points out that the CSRO dismissed her appeal for lack of jurisdiction. She argues that because the dismissal was not on the merits, her claim is timely.

The court finds this argument to be equally unpersuasive. The UPPEA provides a savings clause that permits "[a] claimant [to] bring an action after the 180-day limit . . . if":

    (A)    the claimant originally brought the action within the 180-day time limit;

    (B)    the action described in Subsection (1)(d)(i)(A) failed or was dismissed for a reason other than on the merits; and

    (C)    the claimant brings the new action within 180 days after the day on which the claimant originally brought the action under Subsection (1)(d)(i)(A).

*Id.* § 4(1)(d). Here, Jenkins meets the first two criteria, but she fails to meet the third. Even if the court were to assume that Jenkins brought her original claim with the CSRO on the day that it dismissed her appeal—April 17, 2019—she would have needed to file suit in October 2019. But because she waited to bring her suit until November 2019, her claim remains time-barred.

    Finally, as stated above, Jenkins argues that because she first filed a grievance with the CSRO, the statute of limitations is inapplicable to her cause of action. To support this, she distinguishes between the terms "grievance" and "action" in the statute. A review of the plain terms of the statue, however, proves Jenkins' argument to be without merit. Subsection (1)(e) discusses situations when an employee files a grievance with the CSRO under the savings clause. Importantly, it provides that an employee "who files a grievance under [the savings clause] . . . may not, at any time, bring a civil action in relation to the subject matter of the grievance." *Id.* § 4(1)(e)(i). Thus, again, because Jenkins chose to pursue her claim before the CSRO, she was prohibited from also bringing a lawsuit based on that same subject matter.

    Therefore, regardless of the subsection upon which she attempts to rely, Jenkins' UPPEA claim is nevertheless time-barred. Consequently, the court grants the State's motion as to Jenkins UPPEA claim, and that claim is dismissed with prejudice.

## V.    Section 1983 Claim

In its motion, the State contends that it is not a proper defendant for a Section 1983 claim. In addition, it contends that Jenkins' Section 1983 claim is based exclusively on her alleged constructive discharge. In response, Jenkins concedes that the State is not a proper defendant for this claim, but she argues that her claim is really against the remaining individual defendants.[5] Therefore, Jenkins asks the court for leave to amend her complaint in order to more clearly assert her Section 1983 claim against the individual defendants. Furthermore, she contends that her complaint is adequate, but recognizes that amending it would be helpful for clarification purposes. The State opposes amendment, however, asserting that it would be futile.

First, given the parties' agreement that the State is not a proper defendant for Jenkins' Section 1983 claim, the court grants the State's motion in that respect. Second, as it currently stands, the court finds Jenkins' complaint to be deficient on her Section 1983 claim. For example, in her complaint, Jenkins contends that she had a property interest in her job and employment. Yet, her complaint fails to mention the existence of a property interest beyond the conclusory allegation that she in fact has one. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) ("[I]t is only after the plaintiff first demonstrates the existence and deprivation of a protected property interest that the plaintiff is constitutionally entitled to an appropriate level of process."). Thus, the court concludes that Jenkins' Section 1983 claim must be dismissed. That dismissal, however, is without prejudice as the court sees it fit to allow Jenkins the opportunity to cure the defects in her complaint. Moreover, the court disagrees with the State's contention that amendment would be futile. To support its futility argument, the State contends that Jenkins' complaint fails to allege constructive discharge. But the court has already refuted that argument

---

[5] The remaining Defendants in this case have yet to be served.

12

above. As such, Jenkins will be permitted to amend her complaint in respect to her Section 1983 claim.

## CONCLUSION

Based on the foregoing reasoning, the State's Motion for Judgment on the Pleadings is hereby GRANTED in part and DENIED in part. The State's motion is GRANTED as to Jenkins' Third (Title II claim) and Fourth (UPPEA claim) Causes of Action, and those claims are dismissed with prejudice. The State's motion is DENIED as to Jenkins First (RA discrimination claim) and Second (RA retaliation claims) Causes of Action. Lastly, Jenkins' Fifth Cause of Action (Section 1983 claim) is dismissed without prejudice, and Jenkins is permitted to amend her complaint as to that claim. Therefore, the court directs Jenkins to file an amended complaint within twenty-one (21) days of the date of this Memorandum Decision and Order.

Dated this 23rd day of July, 2020.

BY THE COURT:

DALE A. KIMBALL
United States District Judge